**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VIRGINIA DEAN SLAUGHTER,
Individually and as Personal
Representative of the Estate of
RACHEAL MICHELLE WILSON;
C.W.R., by his father and next
friend ADRIAN RICHARDSON; P.J.D.,
by her father and next friend
LARRY CRAIG DAVIS, JR.,

            *Plaintiffs-Appellants,*

         v.

MAYOR AND CITY COUNCIL OF
BALTIMORE; KENNETH HYDE, in his
official capacity as former
Division Chief of the Baltimore
City Fire Department; JOSEPH
CREST, in his official capacity as
former Lieutenant of the Baltimore
City Fire Department; BARRY
BROYLES, in his official capacity as
former Lieutenant of the Baltimore
City Fire Department,

            *Defendants-Appellees.*

No. 10-2436

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, District Judge.
(1:10-cv-01157-BEL)

Argued: March 22, 2012

Decided: June 7, 2012

Before NIEMEYER, DAVIS, and WYNN, Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Davis joined. Judge Wynn wrote a separate opinion concurring in the result.

---

## COUNSEL

**ARGUED:** Paul David Bekman, SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland, for Appellants. David Eugene Ralph, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellees. **ON BRIEF:** Emily C. Malarkey, SALSBURY, CLEMENTS, BEKMAN, MARDER & ADKINS, Baltimore, Maryland, for Appellants. Ashlea Brown, Amy Beth Leasure, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellees.

---

## OPINION

NIEMEYER, Circuit Judge:

After Racheal Wilson, a new recruit for the Baltimore City Fire Department, tragically died during a "live burn" training exercise, her survivors and estate commenced this action under 42 U.S.C. § 1983 against the Mayor and City Council of Baltimore,* alleging that the Baltimore City Fire Depart-

---

*In addition to the Mayor and City Council, the complaint names as defendants Kenneth Hyde, in his official capacity as former Division Chief of the Baltimore City Fire Department; Joseph Crest, in his official capacity as former Lieutenant of the Fire Department; and Barry Broyles, in his official capacity as former Lieutenant of the Fire Department. We refer to the defendants collectively as the "Baltimore City Fire Department" or the "Fire Department."

ment violated Wilson's substantive due process rights by staging the exercise with *deliberate indifference* to Wilson's safety, so as to shock the conscience.

The district court granted the Fire Department's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), concluding that the deliberate indifference standard is normally applied only to those in the government's custody and that Wilson was not in custody and had an option of declining to participate in the exercise, or even declining to be a firefighter. The court instead applied a standard requiring the showing of intent to harm and concluded that "however reckless" the Fire Department may have been, its actions did not "rise to the level of a constitutional violation."

Applying *Collins v. City of Harker Heights*, 503 U.S. 115 (1992), and *Waybright v. Frederick County*, 528 F.3d 199 (4th Cir. 2008), we affirm. We conclude that because the complaint does not purport to allege that the Fire Department staged the live burn training exercise *with the purpose of causing harm to Wilson or to any other recruit*, it falls short of alleging a substantive due process violation in the context of the facts alleged, even though it might well allege causes of action under state law, as the complaint purports to do in other counts.

I

The amended complaint alleges that on February 9, 2007, Racheal Wilson, a new recruit with the Baltimore City Fire Department, participated in a live burn training exercise staged at a vacant three-story building in Baltimore. The live burn exercise was required as part of the training program for aspiring Baltimore City firefighters. To stage the building for the exercise, officials of the Fire Department tore down wallboards and ceilings to create debris and stuffed walls with highly flammable excelsior. Then they lit fires at multiple locations on the first and second floors. After a period of

delay, Fire Department officials instructed Wilson and her team to proceed to the third floor, with Wilson carrying the hose.

The team encountered "severe fire conditions," and by the time they reached the third floor, they realized that their "lives were in danger." Accordingly, the team began to evacuate the building "through a small window in the back of the dwelling that opened onto the rear roof of the second floor," but Wilson "had difficulty getting through the window," and, when others were unable to pull her through, she fell back into the building. Although the team ultimately managed to get Wilson through the window, she had by then become unconscious. She was immediately taken to the University of Maryland Shock Trauma unit, where she was pronounced dead on arrival. Her autopsy confirmed thermal injury and asphyxia as the causes of death.

The complaint alleges that Wilson's death was avoidable with adequate preparations for the exercise and that the Fire Department created unduly dangerous conditions in staging the exercise. The complaint alleges:

— that it was improper for the Fire Department to stage the building by tearing down wallboards and ceilings, by leaving debris, and by adding flammable excelsior to the walls; and that Fire Department officials "knew that [such a] building was unsuitable" for a training exercise;

— that the Fire Department did not conduct a pre-burn orientation, walkthrough, and planning, as is required for such exercises;

— that the Fire Department did not properly equip recruits and, more specifically, that it did not give Wilson appropriate protective clothing;

— that instructors were not equipped with radios and were not trained to supervise a live burn;

— that, contrary to the National Fire Protection Association's standards, the Fire Department set fires at multiple locations in the building;

— that the Fire Department allowed the fires to burn too long before recruits entered the building; and

— that the water supply for fighting the fire was inadequate, as it was taken from only one hydrant.

In summary, the complaint claims that these and other conditions and circumstances amounted to "willful violations of nationally-recognized safety standards for live burn training exercises."

Based on these factual allegations, Count I of the complaint, brought under 42 U.S.C. § 1983, asserts that the Fire Department's conduct "shocks the conscience and was either intentional, reckless, grossly negligent, and/or deliberately indifferent towards Ms. Wilson's . . . life and liberty," in violation of her Fourteenth Amendment rights. In other counts, the complaint alleged violations of the Maryland Constitution and other state law duties.

On the Fire Department's motion to dismiss, the district court dismissed Count I of the complaint because it failed to state a claim under the Fourteenth Amendment, and it dismissed the remaining counts without prejudice, to be resolved in state court. From the district court's judgment, dated December 3, 2010, the plaintiffs filed this appeal.

## II

The plaintiffs argue that their complaint sets forth facts sufficient to state a substantive due process violation insofar as

it alleges that the Fire Department's conduct was *deliberately indifferent* to the life and safety of Wilson in circumstances where the Fire Department itself created the danger that caused her death. While they concede that the Fire Department did not intend Wilson's harm, which is usually necessary to satisfy the shocks-the-conscience test for a substantive due process violation, *see Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998), the plaintiffs argue that cases also recognize that a showing of deliberate indifference can be sufficient to establish a substantive due process violation when the State either created the danger or was in a special relationship with the plaintiff, such as having custody over her. But the plaintiffs candidly acknowledge that, apart from situations involving custody, the Supreme Court has never applied a "deliberate indifference" standard merely because the State created a danger that resulted in harm. Rather, they rely on the statement in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 201 (1989), where the Court explained, in refusing to hold a department of social services liable for not protecting a child from an abusive father, that "[w]hile the State may have been aware of the dangers that [the child] faced in the free world, *it played no part in their creation*, nor did it do anything to render him any more vulnerable to them." (Emphasis added).

Defendants contend that the government's conduct in this case can only violate the substantive due process guarantee of the Constitution if the government's conduct was "intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849. They conclude that because the facts alleged in the complaint do not suggest that Fire Department officials were motivated by any intent to injure Wilson, or for that matter, any other recruit, the complaint fails to state a claim under 42 U.S.C. § 1983 on which relief can be granted.

"The touchstone of due process is protection of the individual against *arbitrary action* of government." *Lewis*, 523 U.S. at 845 (emphasis added) (internal quotation marks and alter-

ation omitted). "Arbitrary action," however, is used in a constitutional sense, which encompasses "only the most egregious official conduct," namely that which "shocks the conscience." *Id.* at 846. Defining conduct that shocks the conscience does not draw on any traditional standard of liability from tort law but rather refers, as a constitutional construct of substantive due process, to "conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 849.

To be sure, a lower level duty of culpability may amount to a substantive due process violation in those situations where the government is required "to take care of those who have already been deprived of their liberty"—such as pretrial detainees, persons in mental institutions, convicted felons, and persons under arrest. *See Collins*, 503 U.S. at 127 (collecting cases). In those circumstances, the Court has held that the government's *deliberate indifference* to the care of persons in its custody can shock the conscience for purposes of finding a substantive due process violation. *See Lewis*, 523 U.S. at 849-50. The Court has reasoned that the deliberate indifference standard relates to "[t]he 'process' that the Constitution guarantees *in connection with any deprivation of liberty*," imposing on the government a "continuing obligation to satisfy certain minimal custodial standards." *Collins*, 503 U.S. at 127-28.

But the *Collins* Court made clear that this standard does not apply to persons in an employment relationship with the government. "Petitioner cannot maintain . . . that the city deprived Collins of his liberty when it made, and he voluntarily accepted, an offer of employment." 503 U.S. at 128. In *Collins*, the estate of a municipal employee, who in the course of his employment died from exposure to noxious gases when he entered a manhole to unstop a sewer line, sued the city and alleged that the city had failed to train or warn its employees about *known hazards* in the workplace; that the employees had not been trained; that the employees had not been pro-

vided with safety equipment and safety warnings; that the city had received notice of the risks; and that the city "systematically and intentionally failed to provide the equipment and training required by a Texas statute." *Id.* at 117-18. The Court held that, even though the alleged facts might have shown *deliberate indifference*, in the context of a voluntary employment relationship, such conduct was not "arbitrary, or conscience shocking, in a constitutional sense" and would not support a substantive due process violation. *Id.* at 128.

Just as in *Collins*, the plaintiffs in this case alleged that the Baltimore City Fire Department, in conducting the live burn exercise, failed to provide Wilson with safe working conditions, proper equipment, proper training, and particularized notice about risks of which Fire Department officials had actual knowledge. And thus, as in *Collins*, these allegations might be consistent with the Fire Department's deliberate indifference. But in the voluntary employment context, the plaintiffs have not alleged arbitrary (in the constitutional sense) or conscience-shocking conduct because they did not assert that the Fire Department *intended to harm* Wilson, as would be necessary to establish a substantive due process violation. *See Collins*, 503 U.S. at 125-27 & n.10; *Lewis*, 523 U.S. at 848-49.

Applying the Supreme Court's holding in *Collins*, we have held that a fire department recruit who died during a training exercise could not, without alleging an intent to harm, maintain an action for a substantive due process violation. *See Waybright*, 528 F.3d at 208-09. In *Waybright*, the recruit's estate alleged that during a training exercise, the fire department drove the recruits hard, telling them that it did not like quitters; that the recruits were required to run 4.3 miles, perform intensive calisthenics, and run wind sprints on a sweltering day during which the heat index reached 96 degrees; that the supervisors did not bring water, communications, transportation or first aid equipment to the exercise; and that as recruits were failing in stamina, the fire department officials

did not recognize any danger or act promptly to assist those in crisis. *Id.* at 202. At the exercise, Waybright went into cardiac arrest and subsequently died of heat stroke. *Id.* While we acknowledged that the fire department's conduct might well have supported state tort claims, we concluded that it was not arbitrary in a constitutional sense and therefore did not give rise to a claim under the Fourteenth Amendment. *Id.* at 206-08. Rejecting application of the deliberate indifference standard, we noted that the recruit was not in government custody, but could "walk away" from the exercise and, indeed, the job. *Id.* at 207 (citing *Collins*, 503 U.S. at 128). We concluded,

> [D]ue process does not impose a duty on municipalities to provide their employees with a safe workplace or warn them against risks of harm (though state tort law may). [*Collins*] is right on point, for plaintiffs' state-created danger claim, in essence, is that [the fire department] created an unsafe workplace that caused a prospective employee [i.e., a recruit] harm.

*Id.*

It is true that in this case, as it was in *Waybright*, the Baltimore City Fire Department created the danger. But this fact does not satisfy any element of the standard that the Supreme Court has articulated for showing a substantive due process violation with respect to a government employee. Moreover, if we were to recognize that government liability could flow simply from its creation of a dangerous condition, the practical consequences would be, as we noted in *Waybright*, "immense." 528 F.3d at 208.

> [B]y finding a state-created danger here, we might well inject federal authority into public school playground incidents, football (or even ballet) practice sessions, and class field trips, not to mention training sessions for government jobs that require some degree of physical fitness. Sometimes practice is

demanding because games are demanding, and training is demanding because jobs are demanding, and how best to conduct these sessions can rarely be the focus of a constitutional claim.

*Id.*

For these reasons, we hold that the Baltimore City Fire Department's constitutional liability in this case turns on whether it *intended to harm* the new recruits. *See Lewis*, 523 U.S. at 836 ("[I]n such circumstances only a purpose to cause harm unrelated to [a] legitimate object . . . will satisfy the element of arbitrary conduct shocking to the conscience"). Because the plaintiffs concede that no facts in the complaint support such a conclusion, the district court properly dismissed Count I of the complaint, purporting to allege a federal constitutional claim. The plaintiffs' state law claims remain unaffected by our ruling and those claims, which were dismissed by the district court without prejudice, can be litigated in state court.

III

The facts alleged in this case reveal a sad story that might well support state tort claims or other state law claims. But to treat the Fire Department's conduct as a substantive due process violation would be to constitutionalize a state tort claim, which must only be done in the rarest of cases. As we observed in *Waybright*, "where a claim sounds both in state tort law and substantive due process, state tort law is the rule and due process the distinct exception." 528 F.3d at 205. Moreover, the consequences of creating such an exception here based on the fact that the State created the danger would tend to constitutionalize virtually every state-sponsored activity that created or involved a risk of danger. Any movement in this direction would surely contradict the Supreme Court's longstanding reluctance to expand substantive due process and would also disturb the established jurisprudential balance

between protecting the public interest and recognizing private rights when applying the guarantees of substantive due process.

For the reasons given, we affirm the judgment of the district court.

*AFFIRMED*

WYNN, Circuit Judge, concurring in the result:

Because I agree with the majority that the facts of this case are insufficient to state a claim for a violation of Due Process, I concur in the result reached by the majority opinion. I write separately because *Collins v. City of Harker Heights*, 503 U.S. 115, 130 (1992), which held that there is no duty on municipalities to "provide certain minimal levels of safety and security in the workplace" and that "failure to train or to warn its sanitation department employees was not arbitrary in a constitutional sense," resolves this case. *Id.* Further, it would be contrary to the Supreme Court's decision in *County of Sacramento v. Lewis*, 523 U.S. 833, 849-50 (1998), to conclude that in the absence of a custodial relationship, only conduct "intended to harm" is sufficient to state a claim under § 1983. *Ante* at 6.

I.

In *Collins*, the Supreme Court considered whether a municipality's failure to train an employee, provide adequate safety equipment, and post warning notices regarding known hazards violated the Due Process Clause of the Fourteenth Amendment. The Supreme Court held that there is no "constitutional obligation to provide [municipal] employees with certain minimal levels of safety and security . . . ." *Collins*, 503 U.S. at 127. The Supreme Court then went on to examine the city's conduct under the "arbitrary" or "conscience shocking" standard. *Id.* at 128. The Supreme Court found that the city's

conduct constituted negligence, and as a result could not "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Id.* The Supreme Court emphasized that § 1983 was not intended to turn every tort claim into a constitutional violation or to serve as a "'guarantee against incorrect or ill advised personnel decisions.'" *Id.* at 128-29 (quoting *Bishop v. Wood*, 426 U.S. 341, 350 (1976)).[1]

In *Lewis*, the Supreme Court clarified the type of conduct that could be sufficiently "conscience shocking" to state a claim under § 1983. It noted that "liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Lewis*, 523 U.S. at 849 (citing *Daniels v. Williams*, 474 U.S. 327, 328 (1986)). By contrast, "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action *most likely* to rise to the conscience-shocking level." *Id.* (emphasis added).[2] The Supreme Court went on to note that cases "falling within the middle range, following from something more than negligence but 'less than intentional conduct, such as recklessness or gross negligence, is a matter for closer calls,'" *id.* (citation

---

[1]The majority opinion appears to construe the holding in *Collins* to have broad implications in the context of employment. *See ante* at 7 ("even though the alleged facts might have shown *deliberate indifference*, in the context of a voluntary employment relationship, such conduct was not 'arbitrary, or conscience shocking, in a constitutional sense.'"). But that construction would not comport with the Supreme Court's holding in *Collins* which specifically precluded employment based analysis. 503 U.S. at 119 ("The employment relationship . . . is not of controlling significance.").

[2]The majority opinion seems to seize upon this language and carry it much farther than the Supreme Court by defining "conduct that shocks the conscience" as "conduct intended to injure in some way unjustifiable by any government interest." *Ante* at 6. But the Supreme Court has defined the standard in much broader terms and conceded that "the measure of what is conscience shocking is no calibrated yard stick," but rather a standard that "'point[s] the way'" to the correct result. *Lewis*, 523 U.S. at 847 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033, (1973)).

and footnote omitted), and made clear that, under some circumstances, "deliberate indifference" could shock the conscience. *See id.* at 849-50 ("Deliberate indifference that shocks in one environment may not be so patently egregious in another . . . .").[3] In distinguishing between these more difficult, middle-ground cases, the Supreme Court counseled judicial discretion and warned that courts should engage in an "exact analysis of circumstances" rather than "mechanical application" of predetermined rules.[4]

Thus, the decisions in both *Collins* and *Lewis* underscore the Supreme Court's view that, at least in some cases, reckless and deliberately indifferent government action may be arbitrary and egregious in a constitutional sense and thus provide grounds for a viable § 1983 Due Process claim. In *Collins*, the Supreme Court recognized that "potentially meritorious [§ 1983 Due Process] claims by [an] employee" may include circumstances where "the city [gives] an employee a particularly dangerous assignment in retaliation for a political speech, *cf. St. Louis v. Praprotnik*, 485 U.S. 112 (1988), or

---

[3]The majority opinion appears to assert that only a person who has "already been deprived of [his or her] liberty" may claim "deliberate indifference" as a basis for a claim under § 1983. *Ante* at 6. But the use of the custodial example in *Lewis* is not intended to be exclusive, but merely to illustrate a situation in which deliberate indifference would shock the conscience. *See Lewis*, 523 U.S. at 851 ("[T]he description of the custodial prison situation shows how deliberate indifference can rise to a constitutionally shocking level . . . .").

[4]Though the Supreme Court makes clear that cases involving a degree of culpability less than intent to injure require analysis that is "less rigid and more fluid," *Lewis*, 523 U.S. at 850, the majority attempts to impose a rigid limitation on these cases; namely that, outside a custodial relationship, the "shocks the conscience" standard can *only* be met by conduct intended to injure. *Ante* at 6. Rather than following the law the Supreme Court established in *Collins* and *Lewis*, the majority attempts to rewrite it to conform with the dissenting opinion in *Lewis*. *Cf. Lewis*, 523 U.S. at 861-62 (Scalia, J., dissenting) (rejecting the "shocks the conscience" standard as a "throw back to highly subjective substantive-due-process methodologies").

because of his or her gender, *cf. Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)." *Collins*, 503 U.S. at 119. Likewise, in *Lewis* the Supreme Court recognized that "[i]n *Rochin v. California*, 342 U.S. 165 (1952), *the case in which we formulated and first applied the shocks-the-conscience test*, it was not the ultimate purpose of the government actors to harm the plaintiff, but they apparently acted with full appreciation of what the Court described as the brutality of their acts." *Lewis*, 523 U.S. at n.9 (emphasis added).

Significantly, the majority opinion fails to distinguish the "potentially meritorious" claims identified by the Supreme Court in *Collins* from those requiring an intent to injure. Nonetheless, it is important to clarify that the majority opinion when read in light of *Collins* necessarily recognizes, among other things, that an allegation that an employer assigned an employee to a dangerous job in retaliation for the exercise of a constitutional right, where physical injury results, certainly amounts to a plausible allegation of an intent to injure. Although the "intent" in such cases may be an "intent to deter exercise of a constitutional right" such an allegation of intent would suffice to satisfy the majority opinion's "intent to harm" pleading requirement.

## II.

In this case, it is unnecessary to engage in the type of judicial discretion prescribed by *Lewis* to determine whether the City's alleged conduct was "conscience shocking." As the majority correctly identifies, the facts here are similar to the facts in *Collins* and those facing this Court in *Waybright v. Fredrick County*, 528 F.3d 199 (4th Cir. 2008). As a result, the issue presented can, and thus should, be resolved on narrow grounds.

Here, as in *Collins*, the petitioner claims that the city failed to conduct proper training and supply adequate safety equipment in the face of known hazards. The majority correctly

points out that these allegations are insufficient to claim a Due Process violation. However, they are insufficient because "failure to train or to warn . . . employees [i]s not arbitrary in a constitutional sense." *Collins*, 503 U.S. at 130. The petitioner's claim fails because it attempts to transform a negligence claim against the City into a violation of Due Process, which the Court foreclosed in *Collins*, *id.*, and reaffirmed in *Lewis*. *Lewis*, 523 U.S. at 849. I agree with the majority that "[t]he facts alleged in this case reveal a sad story that might well support state tort claims," and that to "constitutionalize" the claims would be unwise and unsupported by precedent. *See ante* at 10.

Similarly, in *Waybright*, we found that a recruit who died during training to become a firefighter could not state a claim under § 1983 when his supervisor did not follow appropriate safety protocol. *Waybright*, 528 F.3d at 208-09. Applying *Collins*, we reasoned that negligent conduct was insufficient to state a claim, *id.* at 206, and that "time to deliberate" does not "transform[] negligent error into constitutionally shocking conduct." *Id.* Like in *Waybright*, the petitioner's § 1983 claim in this case should be dismissed because of the shortcomings of what the petitioner has alleged (i.e., negligence). The problem with petitioner's complaint is not that it fails to allege an "intent to harm"—it's that, like in *Collins* and like in *Waybright*, the petitioner's factual allegations are not "arbitrary" or "shocking to the conscience" in a "constitutional sense." *Collins*, 503 U.S. at 127; *Waybright*, 528 F.3d at 206.

Following *Collins* and *Waybright*, I agree with affirming the district court's decision to dismiss on the narrow grounds that there is no duty on municipalities to "provide certain minimal levels of safety and security in the workplace," *Collins*, 503 U.S. at 130, that "failure to train or to warn . . . employees [is] not arbitrary in a constitutional sense," *id.*, and that, as a result, the petitioner's factual allegations are not "arbitrary" or "shocking to the conscience" in a "constitutional sense." *Id.* at 127; *Waybright*, 528 F.3d at 206. But, in affirm-

ing the district court, we should also recognize that government employees are not categorically excluded from claiming deliberate indifference as a basis for Due Process claims.[5]

### III.

Because I would decide this case on narrow grounds, and because it is necessary to state clearly that under the majority's opinion, employees are not without constitutional protections from reckless and indifferent government action that egregiously and arbitrarily deprives persons of life, liberty, or property, I respectfully concur in the result only.

---

[5]The majority characterizes "deliberate indifference" as a different standard for evaluating claims. *Ante* at 6 ("[T]his standard does not apply to persons in an employment relationship with the government."). But this directly contradicts the Supreme Court's statement in *Lewis* that "deliberate indifference" is not a different standard, but rather a degree of culpability that, in certain cases, may characterize conduct that "shocks the conscience." *See Lewis*, 523 U.S. at 852 ("[T]he description of the custodial prison situation shows how deliberate indifference can rise to a constitutionally shocking level . . . .").