**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1133**

SUSAN VIRGINIA PARKER; LANE LAIRD FUNKHOUSER; JUSTIS FUNKHOUSER, a/k/a J.F., by his parent and next friend Susan Parker; K.F., by her parent and next friend Susan Parker,

Plaintiffs – Appellants,

v.

HENRY & WILLIAM EVANS HOME FOR CHILDREN, INC.; LAURA REGAN, in her personal capacity; MIKE POWERS, in his personal capacity; WINONA POWERS, in her personal capacity; BRENT RUDOLPH, in her personal capacity; MISSY RUDOLPH, in her personal capacity; MICHAEL AUSTIN, a/k/a Toby, in his personal capacity; BRITTANY UTTERBACK, in her personal capacity; JENNIFER WIMER, in her personal capacity; AMANDA JUDD, in her personal capacity,

Defendants – Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Michael F. Urbanski, Chief District Judge.  (5:14-cv-00035-MFU-JCH)

Argued:  January 29, 2019                    Decided:  March 1, 2019

Before DUNCAN, AGEE, and HARRIS, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Agee and Judge Harris concurred.

**ARGUED:** Peter K. Kamakawiwoole, Jr., HOME SCHOOL LEGAL DEFENSE ASSOCIATION, Purcellville, Virginia, for Appellants. Julia Bougie Judkins, BANCROFT, MCGAVIN, HORVATH & JUDKINS, P.C., Fairfax, Virginia; James Morton Bowling, IV, ST. JOHN, BOWLING, LAWRENCE & QUAGLIANA, LLP, Charlottesville, Virginia; Kenneth Francis Hardt, SINNOTT, NUCKOLS, & LOGAN, P.C., Midlothian, Virginia, for Appellees. **ON BRIEF:** Daniel A. Harvill, DANIEL A. HARVILL, PLLC, Manassas, Virginia; James R. Mason, III, HOME SCHOOL LEGAL DEFENSE ASSOCIATION, Purcellville, Virginia, for Appellants. Kevin V. Logan, SINNOTT, NUCKOLS, & LOGAN, P.C., Midlothian, Virginia, for Appellees.

—————————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Plaintiffs-Appellants Susan Virginia Parker and Lane Laird Funkhouser and their two children J.F. and K.F. appeal the district court's dismissal of their 42 U.S.C. § 1983 claims alleging violations of the Fourth and Fourteenth Amendments and state law claims for false imprisonment and negligence. The claims arise from the local department of social services' ("DSS") removal of the children from their parents' home because of suspected child abuse.

Appellants raise the claims against Henry & William Evans Home for Children, Inc. ("Evans Home"), a nonprofit foster care home, along with various individuals who cared for the minors at Evans Home (collectively the "Evans Home Defendants"); three case workers in the Shenandoah County DSS (the "DSS Defendants"); and Michael Austin, a case worker in the Clarke County DSS. The district court dismissed Appellants' claims that the initial removal and continued detention of the children violated their Fourth and Fourteenth Amendment rights and constituted false imprisonment for failure to state a claim. The court also granted summary judgment to the Evans Home Defendants as to Appellants' negligence claim. For the reasons that follow, we affirm.

I.

Appellants allege that Austin began investigating Parker and Funkhouser in connection with truancy charges because of the children's absences from school in 2011–2012. This investigation led Austin to believe that Parker had Munchausen Syndrome by

3

Proxy ("MSBP")--a mental illness in which the sufferer may falsify symptoms of or intentionally cause an illness to her children to gain the sympathy or attention of others. Appellants moved from Clarke County to Shenandoah County in 2012, and the truancy investigation was later dropped.

At around the time Austin began investigating Parker and Funkhouser, the children were diagnosed with an infection of Clostridium Difficile ("C. Diff.")--a bacteria found in human and animal feces that may cause colitis and diarrhea. They went to several hospitals for treatment. During one visit to Rockingham Memorial Hospital on July 22, 2012, Dr. Kent Folsom, the emergency room physician, contacted Clarke County DSS and spoke with Austin, who relayed his belief that Parker had MSBP. Both Dr. Folsom and Austin are mandatory reporters under state law, meaning they are obligated to immediately report any suspected child abuse or neglect. *See* Va. Code. Ann. § 63.2-1509. Dr. Folsom and Austin then notified the Shenandoah DSS about the potential abuse since Appellants resided in Shenandoah County. Appellants allege that at that point, Austin shared with the DSS Defendants his belief that Parker suffered from MSBP without reviewing any medical records or conducting any research. At some point, Appellants left the hospital.

On July 25, 2012, the DSS Defendants conducted an emergency removal of the children from their parents' home without a court order. They took the children to the emergency room, where doctors confirmed that the children had a C. Diff. infection and prescribed medication. The children were placed in the care of Evans Home the next day.

4

On July 27, 2012, two days after the children's removal from their parents' home, the DSS Defendants filed an ex parte emergency removal petition before the Shenandoah County Juvenile and Domestic Relations court (the "JDR court") along with a supporting affidavit (the "Affidavit"). The Affidavit provided that, inter alia, Appellants had been to multiple hospitals. In one instance the parents brought the children to the hospital although doctors were unable to diagnose any illness, and in another the family left against medical advice. The Affidavit stated that Dr. Folsom "suspect[ed] [MSBP]," J.A. 83, which the DSS Defendants suggested was MSBP on the part of one or both parents. After receiving the complaint the DSS Defendants attempted two home visits prior to removing the children. The DSS Defendants also contacted the children's maternal aunt, who refused to provide information regarding the children's location. The Affidavit further stated that child protective services had previously received allegations of medical neglect against Appellants. The JDR court granted temporary custody to Shenandoah DSS.

At a hearing on August 1, 2012, the JDR court declined to make a finding of abuse and neglect against Parker and Funkhouser. With Parker and Funkhouser's consent, the JDR court continued the proceedings and did not return the children to the parents' custody. Parker and Funkhouser did not object. On August 29, 2012, the JDR court again made no finding of abuse or neglect and continued the case, but on this occasion returned the children to the custody of their parents. The children were separated from their parents for thirty-four days.

5

The JDR court ultimately dismissed all petitions concerning the removal of the children, determining that there was no evidence of abuse or neglect. Independently, the Shenandoah DSS issued its own administrative finding that the accusations of abuse and neglect were unfounded.

While the children were in the care of the Evans Home Defendants, J.F. injured his ankle. Believing it to be only a mild sprain, the Evans Home Defendants did not take him to the doctor. Doctors later determined that J.F. had suffered a fractured ankle that had been left untreated for at least three weeks. The Evans Home Defendants also allegedly attempted to obtain statements from the children that they were being abused by Parker and Funkhouser.

After Parker and Funkhouser were reunited with their children they initiated this action.

## II.

Appellants filed a six-count complaint in the United States District Court for the Western District of Virginia, alleging violations of the Fourth and Fourteenth Amendments against Austin and the DSS Defendants for the initial removal of the children, violations of the Fourth and Fourteenth Amendments and wrongful imprisonment against all defendants for the continued detention of the children, and a negligence claim against the Evans Home Defendants related to the ankle injury that J.F. suffered while in their care.

The district court dismissed with prejudice all but the negligence claim. The district court also granted Appellants' subsequent motion for a voluntary dismissal of the negligence claim without prejudice. Appellants then appealed the district court's dismissal of the first five counts of the complaint. Finding no appealable final order, we dismissed the appeal for lack of jurisdiction. *See Parker v. Austin*, 691 F. App'x 129 (4th Cir. 2017) (unpublished). On remand, the district court granted the Evans Home Defendants' motion for summary judgment as to the negligence claim. This appeal followed.

Appellants challenge the district court's dismissal of their Fourth and Fourteenth Amendment and false imprisonment claims. They also challenge the grant of summary judgment to the Evans Home Defendants on the negligence claim. We address each argument in turn.

III.

Appellants predicate their Fourth and Fourteenth Amendment claims on the initial seizure of the children and, separately, on their continued detention. Appellants pursue their initial seizure claims against Austin and the DSS Defendants, and their continued detention claims against all defendants. Appellants also contend that the district court erred in considering statements in the Affidavit that were not included in the complaint. We review the district court's grant of a motion to dismiss de novo, and in so doing "we must accept as true all of the factual allegations contained in the complaint." *Gerner v. Cty. of Chesterfield*, 674 F.3d 264, 266 (4th Cir. 2012).

7

We first address whether the district court erred in considering the Affidavit in construing the plausibility of Appellants' complaint. We then turn to Appellants' Fourth Amendment, Fourteenth Amendment, and false imprisonment claims in turn.

A.

Before turning to the merits of Appellants' claims on appeal, we briefly address their contention that the district court erred in considering statements contained in the Affidavit--the document the DSS Defendants prepared pursuant to the emergency removal petition filed in the JDR court on July 27, 2012 and which defendants attached to their motion to dismiss. The Affidavit contains statements that were not in the complaint. According to Appellants, the district court improperly relied upon these statements in determining that Austin and the DSS Defendants had probable cause to remove the children and that such conduct did not violate Appellants' substantive due process rights.

When considering a motion to dismiss for failure to state a claim, a court may generally look only to the sufficiency of the allegations contained in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, where, as here, a defendant attaches a document to its motion to dismiss, a court may consider it if "it was integral to and explicitly relied on in the complaint and [if] the Appellants do not challenge its authenticity." *Id.* (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). The rationale underlying this exception is that concerns about lack of notice to the plaintiff when the court looks to documents outside

the complaint are dissipated "[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint." *Id.* (citation omitted).

Here, Appellants do not challenge the authenticity of the Affidavit. And though the complaint does not explicitly quote the Affidavit, the Affidavit--to which the complaint refers multiple times--is integral to Appellants' argument that, based on what the defendants knew at the time of the removal as reflected in the Affidavit, the defendants did not have probable cause to remove the children from their parents' custody without a prior court order. Accordingly, the Affidavit falls within the narrow exception to the general rule at the motion to dismiss stage against looking beyond the complaint. *See id.*

Having concluded that the district court properly considered the Affidavit, we proceed to Appellants' contentions that the district court erred in granting the motion to dismiss in favor of the defendants.

## B.

Appellants first contend that the district court erred in dismissing their claims that Austin and the DSS Defendants violated the children's Fourth Amendment rights by initially seizing and continuing to detain them, and that the Evans Home Defendants violated the children's Fourth Amendment rights by continuing to detain them. We disagree.

Austin and the DSS Defendants are entitled to qualified immunity because the constitutional rights at issue were not clearly established at the time of the children's

9

removal and detention. And the Evans Home Defendants were entitled to rely on the DSS Defendants' authority under statute and court order to remove and place the children. We address, first, the claims against Austin and the DSS Defendants, and second, the Evans Home Defendants.

i.

Qualified immunity protects government officials, including social workers like Austin and the DSS Defendants, "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officials who are sued for civil damages are entitled to qualified immunity unless (1) the complaint sufficiently alleges a violation of a constitutional right, *and* (2) the right at issue, defined at the appropriate level of generality, was "clearly established" at the time of the alleged misconduct. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 169 (4th Cir. 2010). It is within our discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* (quoting *Pearson*, 555 U.S. at 236).

In determining whether Austin and the DSS Defendants are entitled to qualified immunity, we exercise our discretion and turn first to whether the constitutional rights at issue were clearly established at the time. A constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand

10

that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "[I]f there is a legitimate question as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity." *Martin v. Saint Mary's Dep't of Soc. Servs.*, 346 F.3d 502, 505 (4th Cir. 2003) (internal quotation marks omitted). Here, the rights at issue are the rights of a child to not be removed from her parents' custody and detained without a judicial order.

We have not articulated the legal standard that applies to Fourth Amendment unlawful seizure claims in the child removal context.[1] No case from the Supreme Court or our circuit has established what standard governs the removal of children from their parents' custody without a prior court order or parental consent. The majority of our sister circuits to have considered this question have held that officials may seize a child from her parents without a judicial order or parental consent only where officials have reasonable cause to believe that imminent harm to a child does not leave sufficient time to obtain judicial authorization prior to the removal. *See, e.g.*, *Kirkpatrick v. Cty. of*

---

[1] While we have, as the parties point out, articulated what constitutional standards apply in other circumstances related to child protection, these cases do not articulate the standard for child *removal* under the Fourth Amendment. Defendants rely on *Wildauer v. Frederick Cty.* in arguing that a reasonable cause standard applies; however, *Wildauer* concerned investigative home visits by social workers. 993 F.2d 369, 372 (4th Cir. 1993) (per curium) ("[I]nvestigative home visits by social workers are not subject to the same scrutiny as searches in the criminal context."). Appellants rely on *Jordan ex rel. Jordan v. Jackson* in arguing that a probable cause standard applies. 15 F.3d 333 (4th Cir. 1994). However, *Jordan* concerned procedural due process regarding the delay in obtaining a court order after removing children from their parents, and in any event explains that civil removals are by nature different than and are granted more latitude than criminal arrests. *See id.* at 350.

11

*Washoe*, 843 F.3d 784, 790 (9th Cir. 2016); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1242 (10th Cir. 2003); *Xiong v. Wagner*, 700 F.3d 282, 291–92 (7th Cir. 2012) (citing *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1010 (7th Cir. 2000)) (requiring exigent circumstances or probable cause to believe that a child "faced an *immediate threat of abuse*") (emphasis added). Those circuits explain that this exacting standard for exigency is the "logical corollary" to the Constitution's proscription against warrantless seizures absent exigent circumstances in the criminal context. *See Kirkpatrick*, 843 F.3d at 791. On the other hand, the Fifth Circuit appears to apply a totality of the circumstances test for exigent circumstances, *see Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 429 (5th Cir. 2008), and the Second Circuit has suggested, though it has not held, that mere probable cause to believe that a child was abused may justify a warrantless removal, *see Southerland v. City of New York*, 680 F.3d 127, 157–58 (2d Cir. 2012) (citing *Tenenbaum v. Williams*, 193 F.3d 581, 605 (2d Cir. 1999)). However, because we have not yet articulated the constitutional standard that governs the removal of children from their parents' custody, that right was not clearly established at the time the DSS removed the children here.

Nor have we or the Supreme Court articulated what constitutional standard applies to the continued separation of children from their parents pending court authorization in the absence of a clearly-established constitutional prohibition of the initial separation. Appellants point to no cases defining the scope of officials' authority to continue detaining children where the children were removed based on suspicion of child abuse or

neglect. We must conclude, therefore, that this right was also not clearly established at the time the children were withheld from their parents in the instant case.

In sum, a reasonable social worker would not have known that the initial seizure and continued withholding of the children violated the Fourth Amendment. Because we determine that the law for the removal of a child and the child's continued detention was not clearly established under the second prong, we need not determine whether there was a constitutional violation under the first prong. Accordingly, Austin and the DSS Defendants are entitled to qualified immunity, thereby barring Appellants' Fourth Amendment claims against Austin and the DSS Defendants. The district court properly dismissed these claims.

## ii.

Next, Appellants contend that they sufficiently alleged that the Evans Home Defendants violated the children's Fourth Amendment rights by continuing to hold them at Evans Home. We disagree.

The day after the Shenandoah DSS placed the children in the Evans Home's care, the JDR court issued an order granting custody to the Shenandoah DSS pending court proceedings. This order authorized the Evans Home Defendants to continue holding the children for the remainder of the separation, leaving only one day--the first day-- unauthorized by court order. However, in holding the children for that day, the Evans Home Defendants reasonably relied on the Shenandoah DSS's statutory authority to

13

conduct emergency removals of children absent a court order under certain circumstances. Va. Code. Ann. § 63.1-1517.

We therefore conclude that the district court properly dismissed Appellants' Fourth Amendment claims against all defendants.

C.

Appellants' claims under the Fourteenth Amendment mirror their claims under the Fourth Amendment. Appellants contend that they sufficiently alleged that their substantive due process right to family integrity and privacy was violated when Austin and the DSS Defendants initially seized the children and when all defendants continued holding the children. We disagree.

The Supreme Court has consistently affirmed that the "interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests recognized." *Troxel v. Granville*, 530 U.S. 57, 65 (2000). This fundamental right, however, is not absolute. We have repeatedly held that where officials remove a child from the parents' custody for the child's protection, only an "abuse of power which 'shocks the conscience' creates a substantive due process violation." *Wolf v. Fauquier Cty. Bd. of Supervisors*, 555 F.3d 311, 322 (4th Cir. 2009) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)); *see D.B. v. Cardall*, 826 F.3d 721, 741 (4th Cir. 2016); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 391–92 (4th Cir. 1990).

14

Conduct that shocks the conscience encompasses "only the most egregious official conduct." *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Such conduct is "abusive or oppressive" in purpose and lacks "justification by any government interest." *Hawkins v. Freeman*, 195 F.3d 732, 744 (4th Cir. 1999). In cases such as this involving the warrantless removal of children, the emergency removal does not shock the conscience when it is "based upon *some evidence* of child abuse." *Weller*, 901 F.2d at 391–92 (emphasis added).

Under this standard, we conclude that the complaint fails to allege a substantive due process violation against the defendants. We turn first to Appellants' claims regarding the initial removal of the children and then to Appellants' claims regarding the continued holding of the children.

i.

Appellants alleged that Austin concocted unsubstantiated allegations that Parker had MSBP on the basis of which Austin and the DSS Defendants set in motion the warrantless removal of the children from their parents' home. Such allegations, they contend, are sufficient to state a claim that Austin and the DSS Defendants violated Appellants' Fourteenth Amendment rights by initially removing the children.

However, we cannot agree that the DSS Defendants did not have "some evidence" of abuse. *See Weller*, 901 F.2d 391–92. The complaint alleges that the DSS Defendants received a complaint from an emergency room physician and another social worker, both

15

mandatory reporters, raising concerns that the children were at risk of harm. At the time, the children were in the emergency room being treated for a bacterial infection. According to the Affidavit, Dr. Folsom and Austin believed that Parker had a mental illness that could compel her to harm her children. Upon receiving the complaint, the DSS Defendants attempted two home visits prior to removing the children and called the children's maternal aunt, who refused to give information regarding the children's location. It also provides that Appellants had been to several hospitals and that in one instance there were no apparent medical reasons for their symptoms, and that Appellants had previously been investigated by child protective services on several occasions. Based on this information, which is consistent with Austin's theory that Parker had MSBP and establishes some evidence of child abuse, the DSS Defendants determined that the children should be removed from their parents' home. Accordingly, the DSS Defendants' conduct did not violate the Fourteenth Amendment. *Id.*

As to Austin, the complaint alleges that he made a determination that Parker had MSBP even though he never interviewed her, reviewed fewer than twenty pages of the children's medical records, and had no mental health expertise. It alleges that he was contacted by a hospital physician about the children, at which point he shared his belief that Parker had MSBP with both the hospital and the DSS Defendants. At best, such allegations amount to claims that Austin's conduct--determining that Parker had MSBP despite not having conducted any investigation or research--was negligent or approached recklessness. However, mere negligence does not sufficiently shock the conscience to violate substantive due process. *Lewis*, 523 U.S. at 834 ("Liability for negligently

16

inflicted harm is categorically beneath the constitutional due process threshold."). And while reckless conduct presents a "closer call[]," *id.*, the complaint does not plausibly allege that Austin's actions here were conscience-shocking. Accordingly, Austin's conduct did not violate Appellants' substantive due process rights as to the initial removal of the children.

Appellants nonetheless argue that the defendants violated their due process rights by failing to conduct a reasonable investigation into Austin's accusations prior to removing the children. However, the Affidavit states that, as described *supra*, the DSS Defendants attempted two home visits prior to removing the children. Where, as here, the defendants had some evidence of child abuse and attempted home visits in response to the complaint, their subsequent separation of the children is not conscience-shocking, particularly given that in cases of child abuse or neglect "there often is no time to investigate." *Wolf*, 555 F.3d at 319. The district court did not err in dismissing Appellants' Fourteenth Amendment claims as to the initial removal of the children.

ii.

Nor does the complaint sufficiently allege that the DSS Defendants, Austin, or the Evans Home Defendants violated Appellants' substantive due process rights by continuing to detain the children at Evans Home. The concerns articulated in the Affidavit were affirmed two days after the removal when the JDR court found that there was probable cause to continue detaining the children pending proceedings. The

17

continued detention of the children at the Evans Home by all defendants was reasonable pursuant to this court order.

As to the two days prior to the court order, Appellants argue that the defendants' conduct shocks the conscience because once the children were diagnosed with C. Diff. infections on the day of their removal, the defendants knew or should have known that there was no cause for their continued separation from their parents. This contention, however, presupposes that an actual infection with C. Diff., given its nature as a bacterial infection, necessarily forecloses the possibility of abuse. To the contrary, however, the children could have been exposed to the source of the infection *because* of the abuse.

Appellants also argue that the defendants' unexplained two-day delay in filing the emergency removal petition was conscience-shocking because it violated Virginia state law, which requires that officials file the petition "as soon as possible" and in all cases within seventy-two hours of the removal. Va. Code. Ann. § 63.2-1517. Although we have stated that "as soon as possible" under this statute presumably requires procuring an order the same day as the removal or, "at the latest, the next business day," *Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 344 (4th Cir. 1994), Appellants fail to provide any support showing that a two-day delay shocks the conscience. It cannot be said that the defendants did not have some evidence of abuse, and accordingly their conduct was not so arbitrary or oppressive as to shock the conscience.

Appellants argue that the Evans Home Defendants worked with Austin and the DSS Defendants to obtain statements from the children against their parents. However, this bare allegation does not indicate that the Defendants engaged in anything more

18

nefarious than interviews with the children about the suspected abuse, a step that was not only constitutional for the defendants to take, but prudent. While attempts to obtain inaccurate information or to coach the children might raise different issues, the allegations actually stated in the complaint do not shock the conscience.

We therefore conclude that the district court properly dismissed Appellants' Fourteenth Amendment claims as to the initial removal of the children and their continued withholding.

D.

Appellants next contend that they sufficiently alleged claims of false imprisonment against all defendants. In Virginia, false imprisonment is the "restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011). Appellants allege that because the children were unlawfully seized and detained at the Evans Home in violation of the Fourth and Fourteenth Amendments, all defendants are liable for false imprisonment. We conclude that the complaint fails to plausibly allege this claim against any of the defendants.

The Evans Home Defendants cannot be held liable for false imprisonment because the children were lawfully placed in their care pursuant to the emergency removal statute and later pursuant to a court order.

Appellants' claims against Austin and the DSS Defendants are barred by statutory immunity. Virginia Code Section 63.2-1512 protects mandatory reporters, such as social workers, providing that officials who take a child into custody "shall be immune from

19

any civil or criminal liability" unless Appellants can prove that the official "acted in bad faith or with malicious intent." Va. Code Ann. § 63.2-1512. We have explained that Virginia's child protection framework establishes a "strong presumption that immunity applies." *Wolf*, 555 F.3d at 318.

Here, the complaint nowhere alleges that Austin or the DSS Defendants acted in bad faith or with a "malign motive." *Id.* There was no allegation that, for example, either defendant acted out of self-interest or with intent to "settle some score with the child's parent" rather than in the interest of protecting the children. *Id.* At most, the complaint suggests that Austin and the DSS Defendants negligently failed to investigate the accusations before removing the children--but, as we explained in *Wolf*, negligence does not rise to the level of bad faith, and "Virginia law requires something more than a mistaken report . . . or *even a report that was negligently tendered.*" *Id.* (emphasis added). Austin and the DSS Defendants are therefore entitled to statutory immunity.

The court therefore did not err in dismissing Appellants' false imprisonment claims.

IV.

We turn now to J.F.'s contention that the district court erred in granting summary judgment to the Evans Home Defendants on his negligence claim on the basis of charitable immunity. J.F. argued that the Evans Home Defendants negligently failed to care for his ankle injury. We review the district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party. *Bauer v.*

20

*Lynch*, 812 F.3d 340, 347 (4th Cir. 2016). "Summary judgment is not appropriate unless the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* Because Evans Home is a charitable organization and J.F. was a beneficiary of its charitable purpose, we affirm.

Charitable immunity bars tort liability suits against charitable organizations in Virginia. *Ola v. YMCA of S. Hampton Rds., Inc.*, 621 S.E.2d 70, 72 (Va. 2005). For this immunity to apply, an entity must establish two elements: (1) that it is "organized with a recognized charitable purpose and that it operates in fact in accord with that purpose," and (2) that the plaintiff "was a beneficiary of the charitable institution at the time of the alleged injury." *Id.* at 72–73.

Here, J.F. concedes that, under the first element, Evans Home is a charitable organization that may be eligible for charitable immunity. J.F. contends instead that he was not a beneficiary under the second element because neither he as a minor nor his parents willingly accepted the benefits offered by Evans Home. This argument fails for several reasons.

First, J.F. misconstrues the test for whether an individual is a beneficiary of charity. J.F. relies on language from two cases stating that charitable immunity applies where the claimant accepts the charity's benefits. *See Univ. of Va. Health Servs. Found. v. Morris ex rel. Morris*, 657 S.E.2d 512, 517 (Va. 2008); *Weston v. Hosp. of St. Vincent*, 107 S.E. 785, 791 (Va. 1921). Instead, the relevant inquiry focuses on the "beneficial relationship"--that is, whether the individual "receives something of value, which the organization by its charitable purpose, undertakes to provide." *Ola*, 621 S.E.2d at 77.

21

For instance, a stranger or invitee to whom the organization owed a duty of reasonable care is not a beneficiary for the purposes of charitable immunity. *See, e.g.*, *Damascus v. Volunteer Fire Dep't, Inc.*, 109 F. Supp. 3d 907, 910–11 (W.D. Va. 2005) (holding that a claimant who participated in the fire department's bingo games was not a beneficiary of the department's charitable benefits but was instead an invitee to whom the department owed a duty of care). Nor does charitable immunity apply if the beneficial relationship is too attenuated. *See, e.g.*, *Straley v. Urbanna Chamber of Commerce*, 413 S.E.2d 47, 50–51 (Va. 1992) (holding that a woman who was injured while attending a charity's festival was not a beneficiary of the charity because the charity's purpose was to promote a town, and she was not a resident of that town). By contrast, here, J.F. received benefits that fall squarely within the ambit of the Evans Home's charitable purpose, including supervision, lodging, meals, activities, and clothes.

Second, J.F.'s contention that his parents did not consent to his care at Evans Home is unavailing. By judicial order the Shenandoah DSS, and not J.F.'s parents, had custody over him during the period in question, and there is no dispute that the DSS consented to J.F.'s placement in Evans Home. And to the extent that J.F. contends that he, as a minor, could not willingly accept the benefits of Evans Home, his argument is belied by case law. In *Ola*, a thirteen-year-old girl who was sexually assaulted in a YMCA was deemed a beneficiary of the YMCA for purposes of charitable immunity because she was participating in the YMCA swimming program at the time of her injury. 621 S.E.2d at 72, 77–78. J.F. was therefore a beneficiary of Evans Home's charitable purpose.

22

Accordingly, the Evans Home and its three workers are entitled to charitable immunity. *See Moore v. Warren*, 463 S.E.2d 459, 460–61 (Va. 1995) (holding that a charity's agents, servants, and volunteers are entitled to charitable immunity for negligence while engaging in the charity's work). J.F.'s negligence claim against the Evans Home Defendants is therefore barred, and the district court properly granted their motion for summary judgment.

V.

For the foregoing reasons, we affirm the dismissal for failure to state a claim as to the Appellants' Fourth and Fourteenth Amendment claims and their false imprisonment claim. We also affirm the grant of summary judgment to the Evans Home defendants as to the negligence claim.

*AFFIRMED*

23