**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

───────────

**No. 20-1410**

───────────

JOHN JOSEPH CALLAHAN, as the Administrator of the Estate of Meggan Lee Callahan,

      Plaintiff – Appellant,

   v.

NORTH CAROLINA DEPARTMENT OF PUBLIC SAFETY; ANNIE D. HARVEY; DAVID MILLIS; DEMETRIUS A. CLARK, individually; JOHN H. SWAIN, individually; ANTHONY SPRUILL, individually; ORRY C. SLADE, individually,

      Defendants – Appellees.

───────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Elizabeth City.  Malcolm J. Howard, Senior District Judge.  (2:19-cv-00016-H)

───────────

Argued:  September 23, 2021          Decided:  November 17, 2021

───────────

Before RICHARDSON and QUATTLEBAUM, Circuit Judges, and KEENAN, Senior Circuit Judge.

───────────

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Richardson and Senior Judge Keenan joined.

───────────

**ARGUED:** William Ellis Boyle, KNOTT & BOYLE, PLLC, Raleigh, North Carolina, for Appellant.  Tamika Lynn Henderson, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Joshua H. Stein, Attorney

General, Terence Steed, Special Deputy Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Raleigh, North Carolina, for Appellees.

QUATTLEBAUM, Circuit Judge:

This appeal involves the pleading requirements for a substantive due process claim under 42 U.S.C. § 1983. When advancing such a claim under the state-created danger theory, a plaintiff must plausibly allege more than a mere failure to protect from danger; a plaintiff must plead that the state affirmatively created the danger. Because the plaintiff here failed to do so, and despite the tragic circumstances of this case, we affirm the district court's dismissal of the claim.

I.

Sergeant Meggan Lee Callahan worked as a shift supervisor responsible for a prisoner housing unit at Bertie Correction Institution (BCI). Craig Wissink, a murderer serving a life sentence without the possibility of parole, was housed in the medium custody unit that Sergeant Callahan supervised.

On April 26, 2017, Sergeant Callahan wrote a disciplinary report for Wissink's failure to follow a direct order. Later that same day, Wissink started a fire in a trashcan in the unit. Responding to the incident, Sergeant Callahan put the fire out with a fire extinguisher. Wissink then threw boiling liquid, that he had heated up in the microwave, in Sergeant Callahan's face. After Sergeant Callahan fell to the floor, Wissink grabbed the fire extinguisher from her and repeatedly beat her with it. Sergeant Callahan died from this brutal attack.

John Joseph Callahan, Sergeant Callahan's father and the administrator of her estate, sued the North Carolina Department of Public Safety, which operates BCI, and six

individual defendants,[1] who either managed the prison or worked there. Callahan sued under 42 U.S.C. § 1983 for violation of his daughter's substantive due process rights under the Fourteenth Amendment. Callahan alleges that approximately a week before Sergeant Callahan's murder, Wissink warned "BCI officials that he had homicidal thoughts and needed help for his mental health conditions." J.A. 16–17. Despite that, the complaint alleges, no one at BCI took any action to address this warning and Wissink remained in medium custody. Callahan also alleges that, while BCI's policies and procedures required four officers per shift for Sergeant Callahan's unit, on the day of the murder, one of the four positions had not been filled. Therefore, only three officers were on duty. Further, according to the complaint, of the three officers on duty, only Sergeant Callahan was fully trained. Based on these facts, Callahan alleges the defendants' actions constitute a state-created danger that led to Sergeant Callahan's death.

Defendants moved to dismiss the complaint, arguing (1) the North Carolina Department of Public Safety was immune from suit, (2) the complaint failed to allege affirmative acts by the individual defendants as required to plausibly plead a substantive due process violation claim based on the state-created danger theory, (3) the allegations

---

[1] Originally, Callahan sued other individual defendants but appeals the dismissal of only six: Annie D. Harvey, David A. Millis, Demetrius A. Clark, John H. Swain, Anthony K. Spruill and Orry C. Slade. Harvey was the Eastern Region Director and the immediate supervisor of the BCI Administrator. Millis was the Acting BCI Administrator and was responsible for the total operation of the prison. Clark was the BCI Assistant Superintendent. Swain was a BCI Captain who supervised various correctional staffers, including Spruill. Spruill supervised the unit where Sergeant Callahan was working. Slade was a BCI Assistant Unit Manager and assisted Spruill in "supervising the operation of" that same unit. J.A. 13.

against the individual defendants in their official capacity were improper and (4) the individual defendants were immune from suit under qualified immunity. In response, Callahan moved to amend the complaint. The proposed amended complaint removed the Department of Public Safety as a defendant and switched the allegations originally alleged against it to the individual defendants collectively.

The district court dismissed Callahan's complaint under Federal Rule of Civil Procedure 12(b)(6). The court held that Callahan's substantive due process claim failed to adequately allege facts that would implicate the state-created danger doctrine. Specifically, it concluded that Callahan "failed to allege how the individual defendants 'created or substantially enhanced the danger which resulted in' Sgt. Callahan's death" and failed to plead "intent to harm." J.A. 76 (quoting *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015)).[2] The court also denied the motion to amend as futile, because the motion did not offer additional facts on the issues that formed the basis of the district court's order of dismissal.

Callahan timely appealed, challenging the district court's dismissal for failure to adequately plead a state-created danger and for failure to plead intent to harm. He does not

---

[2] The district court also dismissed the complaint on the grounds that the allegations improperly grouped allegations against all the individual defendants collectively. Because we affirm on the other grounds on which the district court dismissed the complaint, we need not address the grouping issue. In addition, the district court dismissed the North Carolina Department of Public Safety, and after Callahan clarified that he was not suing the individual defendants in their official capacities, indicated that it was only addressing the individual defendants in their individual capacities. Callahan does not challenge these aspects of the district court's order. Finally, the district court did not address the individual defendants' argument concerning qualified immunity, but neither party raises that issue on appeal.

5

challenge the district court's denial of his motion to amend. We have jurisdiction pursuant to 28 U.S.C. § 1291.[3]

II.

Section 1983 of Title 42 of the United States Code imposes liability on state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. The Fourteenth Amendment Due Process Clause protects individuals from states that would "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Supreme Court has interpreted that Clause to provide substantive rights which "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (internal quotation marks omitted). Thus, a plaintiff asserting a § 1983 substantive due process claim must allege both the deprivation of his life, liberty or property interest by a state actor, and that the deprivation of this interest was "arbitrary in the constitutional sense." *Id.* at 129; *see also Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 109 (4th Cir. 2011).

However, both the Supreme Court and this Circuit have warned against "constitutionalizing" state tort law through the Due Process Clause. *Collins*, 503 U.S. at 128 (emphasizing that "the Due Process Clause 'does not purport to supplant traditional tort law,'" and therefore, should not "be interpreted to impose federal duties that are

---

[3] This Court reviews the district court's ruling on a motion to dismiss de novo. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).

analogous to those traditionally imposed by state tort law") (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)); *see also Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 323 (4th Cir. 2012) (declining to "constitutionalize a state tort claim"); *Waybright v. Frederick Cnty.*, 528 F.3d 199, 204 (4th Cir. 2008) ("In case after case, the Supreme Court has . . . spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law.'") (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). To prevent this, the Supreme Court and our Circuit have established well-settled limits on substantive due process claims. This appeal involves one of those limits.

A.

As noted above, to plead a due process claim against a state actor, the plaintiff must allege the state deprived him or her of life, liberty or property. Generally, that means that the state is not responsible for a third party's conduct which infringes on those interests. *Graves v. Lioi*, 930 F.3d 307, 319 (4th Cir. 2019).

The Supreme Court addressed this limit in *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). There, after a man beat his child into a coma the mother of the child sued state social services. She complained that social services, despite receiving reports of the father's abuse, did not remove the child from the father's custody. In rejecting this claim, the Court first explained what the Due Process Clause does, and, importantly, what the Due Process Clause does not do:

> The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot be fairly extended to impose an affirmative

7

obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney*, 489 U.S. at 195. The Court went on: "[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id*. at 196. The Court concluded:

> If the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them. As a general matter, then, we conclude that a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process clause.

*Id.* at 196–97. But there is an exception: the state-created danger doctrine.[4] The state-created danger doctrine applies where (1) the state actor directly "created or increased the risk" of the harm to the victim and (2) "did so directly through affirmative acts." *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015). It is a "'narrow' exception to the general rule that state actors are not liable [under the Due Process Clause] for harm caused by third parties." *Graves*, 930 F.3d at 319 (citations omitted). This exception was implied from *DeShaney*'s explanation that "[w]hile the State may have been aware of the dangers that [the child]

---

[4] The other is the "special relationship" exception, but Callahan did not allege this exception and for good reason. The "special relationship" exception arises only in a custodial context and not in an employment context. *See Collins*, 503 U.S. at 127–28 (finding a city employee in a dangerous workplace not in a custodial relationship "when [the city] made, and he voluntarily accepted, an offer of employment"); *see also Slaughter*, 682 F.3d at 322 (noting that decedent was a voluntary employee and not in custody and thus only the state-created danger doctrine was appropriate).

faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them." *DeShaney*, 489 U.S. at 201.

We first addressed the state-created danger doctrine in *Pinder v. Johnson*, 54 F.3d 1169, 1176–77 (4th Cir. 1995). There, a woman brought a § 1983 action against a police officer who responded to a domestic violence report at her home. *Id.* at 1171–72. The woman's ex-boyfriend had broken into her house, assaulted her, and threatened to murder her and her three children. *Id.* at 1172. In response to her obvious concerns, the officer assured her that the ex-boyfriend would be charged with assault and locked up overnight. *Id.* But the ex-boyfriend was released that night after the officer charged him with lesser offenses. *Id.* The ex-boyfriend then returned to the woman's house while she was away at work and set it on fire, killing her three children. *Id.* She argued the officer's assurance that her ex-boyfriend would be locked up overnight should overcome the general rule that state actors are not liable under the Due Process Clause for harm caused by third parties. We disagreed:

> It cannot be that the state "commits an affirmative act" or "creates a danger" every time it does anything that makes injury at the hands of a third party more likely. If so, the state would be liable for every crime committed by the prisoners it released. No amount of semantics can disguise the fact that the real "affirmative act" here was committed by [the ex-boyfriend], not by [the police officer]. As was true in *DeShaney,* the state did not "create" the danger, it simply failed to provide adequate protection from it.

*Pinder*, 54 F.3d at 1175 (internal citations omitted).

Since *Pinder*, "we have never issued a published opinion recognizing a successful state-created danger claim." *Turner v. Thomas*, 930 F.3d 640, 646 (4th Cir. 2019). In the cases that have followed, we have repeatedly recognized "the state-created danger doctrine

9

is narrowly drawn, and the bar for what constitutes an 'affirmative act' is high." *Id.* at 645 (citing *Pinder*, 54 F.3d at 1175). Our opinions in *Doe* and *Graves* illustrate our approach to this doctrine.

In *Doe*, we upheld a grant of judgment as a matter of law to military-school officials who allegedly failed to investigate—and even covered up—complaints about a camp counselor's sexual misconduct to campers when that counselor later molested another camper. And even though the decision affirmed an order granting summary judgment rather than an order granting a motion to dismiss, it provides important guidance pertinent to the allegations before us today. "[A]llowing continued exposure to an existing danger by failing to intervene is not the equivalent of creating or increasing the risk of that danger." *Doe*, 795 F.3d at 439. The "concept of 'affirmative acts' should not extend 'beyond the context of immediate interactions between the [state actor] and the plaintiff.'" *Id.* at 441 (alteration in original) (citing *Pinder*, 54 F.3d at 1176 n.*). A "downstream, but-for connection" between the state's conduct and the alleged harm "stretches the 'affirmative acts' concept too far" to support a state-created danger claim. *Id*. at 442.

In *Graves*, we affirmed a Rule 12(b)(6) dismissal of a state-created danger claim against police who failed to pursue a warrant and even allowed a man accused of assaulting his wife to delay for a few days before self-surrendering. In part because of that delay, the man stabbed his wife to death. Although the plaintiff there attempted to recast inactions and omissions as affirmative acts, we held that the killer created the direct danger and that the state actors did not either "directly create or increase, i.e., cause, the risk a third party posed to the victim." *Graves*, 930 F.3d at 319–20. Thus, we concluded that "[b]ecause the

evidence concerning these events does not support [the plaintiff's] characterization of them as 'affirmative acts' creating or increasing a risk to [the victim], the record does not support a claim under the state-created danger doctrine." *Id.* at 331. Together with *Doe*, *Graves* makes clear that the state must create the direct danger that causes the injury or death.

B.

With those requirements in mind, we turn to Callahan's allegations. According to the complaint, "[d]efendants' actions in placing Sergeant Callahan in a dangerous situation with inadequate staffing based on lack of trained and experienced officers to support her consciously disregarded a substantial and great risk of serious harm which was obvious, apparent, and grave." J.A. 23. Callahan adds that "[d]efendants were also aware of, or should have been aware of, the imminent threat posed by Inmate Wissink." J.A. 24.

Callahan argues that these allegations satisfy the pleading requirement for a state-created danger claim. He insists he has alleged the affirmative acts that our precedent requires. More specifically, Callahan argues that the defendants knew about the risks, "had an affirmative duty to avoid them, and instead affirmatively acted to keep Inmate Wissink [in Callahan's unit] while assigning too few and untrained staff." Appellant's Br. 4. He also contends that he alleged that the "[d]efendants affirmatively sent Sgt. Callahan, and her coworkers, into [that unit] on April 27 with full knowledge" of two risks—the risk posed by Wissink and the risk of understaffing and improper training. *Id.* at 4–5. According to Callahan, these are affirmative acts that, if accepted as true, would give rise to a state-created danger claim.

11

Callahan's argument, however, misses the point. The question is not how Callahan characterizes the allegations. It is not enough to reframe a failure to protect against a danger into an affirmative act. As we noted in *Doe*, "inaction can often be artfully recharacterized as 'action,'" but we must "resist the temptation to inject this alternate framework into omission cases." 795 F.3d at 441 (quoting *Pinder*, 54 F.3d at 1176 n.*). The critical questions are: What is the pertinent danger, and did the state create it? Callahan's allegations make clear that the danger was Wissink, and none of the defendants created that danger. The staffing and training decisions may reflect a failure to adequately respond to the danger posed by Wissink. But under our precedent, such failures do not support a state-created danger claim. They are neither the "immediate interactions" with the plaintiff called for in *Doe* nor the "direct cause" of the injuries required by *Graves*. These choices are simply too far down the causal chain of events to result in liability under the Due Process Clause. And without allegations that, if accepted as true, meet these legal requirements, the complaint does not plausibly state a § 1983 substantive due process claim under the state-created danger theory.

The Due Process Clause does not convert state-law tort claims into constitutional violations actionable under § 1983. Our precedent is clear: Callahan's allegations do not plausibly state a claim for a state-created danger.[5]

---

[5] The district court alternatively dismissed the complaint because Callahan did not allege intent to harm. Callahan's challenge to that aspect of the court's decision implicates another limit on substantive due process claims. To support a substantive due process claim, the challenged conduct must be arbitrary. *Collins*, 503 U.S. at 129. That requirement ensures that alleged violations of substantive due process do not improperly infringe on

## III.

This case involves tragic circumstances, but it does not involve a due process violation. Callahan failed to meet the pleading requirements for a substantive due process claim. "In cases like this, it is always easy to second-guess. Tragic circumstances only sharpen our hindsight, and it is tempting to express our sense of outrage at the failure" of the prison staff to protect Sergeant Callahan from a dangerous inmate. *Pinder*, 54 F.3d. at 1178. However, to hold that Callahan's allegations amount to a plausible substantive due process claim would go against our precedent and constitutionalize a state tort claim. That we refuse to do.

For the reasons given above, the judgment of the district court is

*AFFIRMED.*

---

state tort law. Only certain conduct is "of constitutional magnitude." *Waybright*, 528 F.3d at 204; *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). The conduct must be "conscience shocking." *Collins*, 503 U.S. at 128. Where executive action is concerned, only the most "egregious" and "outrageous" official conduct will do. *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). Additionally, in the context of voluntary public employment, to meet the arbitrariness requirement, the government employers only shock the conscience if they "intend[] to harm" the employee. *Slaughter*, 682 F.3d at 323. Here, Callahan argues that, although he did not plead intent to harm, he adequately pled this element of a substantive due process claim by alleging defendants "acted with at least gross negligence or recklessness." Appellant's Br. 8. While this argument appears at odds with *Slaughter*, we need not resolve this issue since the absence of sufficient allegations that support Callahan's state created danger theory is fatal to the complaint.