**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 22-1020**

_____

KIMBERLY BURNS-FISHER,

Plaintiff - Appellee,

v.

ANNA MARIA ROMERO-LEHRER, in her individual and official capacity,

Defendant – Appellant,

and

PENDER COUNTY BOARD OF EDUCATION; STEVE HILL, Superintendent, in his individual and official capacity,

Defendants.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Dever III, District Judge.  (7:21-cv-00068-D)

_____

Argued:  December 6, 2022                    Decided:  January 13, 2023

_____

Before NIEMEYER, THACKER, and RICHARDSON, Circuit Judges.

_____

Reversed and remanded by published opinion.  Judge Thacker wrote the opinion, in which Judge Niemeyer and Judge Richardson joined.

_____

**ARGUED:** Norwood Pitt Blanchard, III, CROSSLEY MCINTOSH COLLIER HANLEY & EDES PLLC, Wilmington, North Carolina, for Appellant. Bruce W. Berger, KNOTT &

BOYLE, PLLC, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  W. Ellis Boyle, KNOTT & BOYLE, PLLC, Raleigh, North Carolina, for Appellee.

---

THACKER, Circuit Judge:

Kimberly Burns-Fisher ("Appellee") was a middle school teacher in Pender County, North Carolina when she was physically attacked by a special education student in her language arts class. There is no dispute that the student was known to have been violent on prior occasions. At the time of the incident involving Appellee, Anna Maria Romero-Lehrer ("Appellant") was the principal of the school where the attack occurred.

After the incident, Appellee brought this action, and Appellant moved to dismiss the claims against her. In a brief, single-page order, the district court denied Appellant's motion to dismiss, which was based on, among other arguments, her qualified immunity defense. Because Appellee failed to sufficiently allege that Appellant violated her constitutional rights, we hold that Appellant is entitled to qualified immunity. Therefore, we reverse and remand for further proceedings consistent with this opinion.

I.

On April 19, 2018, Appellee was designated to teach an "'inclusion class,' meaning that it included both special education and 'mainstream' students." J.A. 9. [1] According to the complaint, Pender County Board of Education policy requires that "when a class has ten of thirty students with [Individualized Education Plans ("IEPs")], two teachers must be present." *Id.* at 10. In addition, one of those two teachers must be certified and trained as an exceptional child ("EC") teacher. Appellee maintains that Appellant frequently condoned the teaching of inclusion classes without the required second teacher present.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

3

On the day of the incident, 10 of the 30 students in Appellee's language arts class had IEPs, but there was no EC teacher present in the classroom.  Appellee alleges that Appellant knew that she was the only teacher in her classroom but nevertheless did not send a second teacher to Appellee's class.

Toward the end of Appellee's language arts class, the students played a vocabulary game in which the results were entered on a whiteboard.  When Appellee removed the results from the whiteboard, an EC student -- who is referred to in the complaint as TB[2] -- called Appellee a "moron."  J.A. 11.  At the time of the incident, TB was 15 years old and considered to be at the mild end of the autism spectrum.  Appellee told TB that it was inappropriate to call a teacher a moron and asked him to come up to her desk.  As TB approached Appellee, he hit her on the left side of her head with his bookbag.

After the initial attack, Appellee attempted to stand up, but TB knocked her back down into her chair.  During this altercation, Appellee fell to the ground and hit her head on either a table, a filing cabinet, or the ground.  While Appellee was on the floor, TB kicked her in the head and back.  As a result of this incident, Appellee suffered multiple injuries which required medical treatment, including surgery, and kept her from returning to work as of the date the complaint was filed.

On April 9, 2021, Appellee brought this action against the Pender County Board of Education (the "Board"), its superintendent at the time of the incident, Steve Hill

---

[2] Because TB was a minor at the time of the incident, the complaint refers to him by his initials only, and we do as well.

("Superintendent Hill"), and Appellant.  In the complaint, Appellee asserted the following five 42 U.S.C. § 1983 claims: (1) a substantive due process claim; (2) a deliberate indifference claim; (3) a supervisory liability claim against Superintendent Hill; (4) a claim seeking personal liability against Superintendent Hill; and (5) a claim seeking personal liability against Appellant.  Relevant here, the personal liability claim against Appellant alleges that Appellant knew or should have known that her actions and inactions could have led to a violation of Appellee's constitutional rights.

On June 14, 2021, Appellant moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the claims against her failed as a matter of law because she was entitled to qualified immunity.  On December 22, 2021, the district court issued a single-page order denying Appellant's motion to dismiss.  After explaining that it reviewed the complaint and the motion to dismiss "under the governing standard," J.A. 32, the district court denied the motion without addressing the parties' arguments or explaining the legal basis for its ruling.

Appellant timely filed a notice of appeal.  Appellant raised other grounds for dismissal, but only the district court's denial of qualified immunity is at issue in this appeal.  The other defendants are not a part of this appeal because Appellee voluntarily dismissed Superintendent Hill and the jurisdictional basis for this appeal -- namely, the district court's denial of qualified immunity -- is inapplicable to the Board.  *See Rogers v. Pendleton*, 249 F.3d 279, 285 (4th Cir. 2001) ("A district court's denial of qualified immunity is immediately appealable under the collateral order doctrine, because qualified immunity confers immunity from suit and not merely from liability."); *see also Owens v. Baltimore*

*City State's Att'ys Office*, 767 F.3d 379, 402 (4th Cir. 2014) ("Unlike public officials, municipalities do not enjoy qualified immunity.").

## II.

"We review de novo the denial of a motion to dismiss based on qualified immunity, accepting as true the facts alleged in the complaint and viewing them in the light most favorable to the plaintiff." *Evans v. Chalmers*, 703 F.3d 636, 646 (4th Cir. 2012) (internal quotation marks omitted).

## III.

Appellant argues that the district court erred by determining that she was not entitled to qualified immunity. "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020). "To determine whether a defendant is entitled to qualified immunity, we ask two questions: (1) Has the plaintiff alleged a violation of a federal right? (2) Was the right at issue clearly established at the time of the alleged violation?" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (internal citation omitted).

Appellee contends that Appellant violated her "constitutional liberty interest in bodily integrity," J.A. 22, by "establishing a state-created danger," Appellee's Br. at 8. This alleged constitutional violation is rooted in the state-created danger doctrine, which is an exception to the general rule that "the Due Process Clause of the Fourteenth Amendment

6

does not require governmental actors to affirmatively protect life, liberty, or property against intrusion by private third parties." *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995). Importantly, the state-created danger exception "applies only when the state affirmatively acts to create or increase the risk that resulted in the victim's injury." *Graves v. Lioi*, 930 F.3d 307, 319 (4th Cir. 2019); *see also Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142, 147–48 (4th Cir. 2021) ("It is not enough to reframe a failure to protect against a danger into an affirmative act.").

Here, Appellee's state-created danger claim centers on a series of alleged choices or inactions by Appellant which are far removed from TB's physical attack on Appellee. Specifically, Appellee attempts to recast Appellant's knowledge of TB's prior acts of violence and creation of the staffing schedule which required Appellant to teach TB on the day of the incident -- without a second teacher in her classroom -- as affirmative acts. But Appellee fails to point to any action by Appellant which created the danger that resulted in Appellee's injuries. At most, Appellee points to acts or omissions by Appellant that suggest Appellant knew that TB posed a risk to Appellee, but nevertheless failed to prevent TB from attacking Appellant. For example, Appellee alleges that prior to the incident, Appellee "requested that TB be removed from her class for her safety and the safety of the students in the class," but "[Appellant] refused." J.A. 14. Appellant's alleged knowledge of TB's violent history and her failure to prevent TB from attacking Appellee are insufficient to constitute affirmative acts because "the state must create the direct danger that causes the injury or death." *Callahan*, 18 F.4th at 148. Because the conduct Appellee

7

has identified did not directly cause Appellee's injuries, Appellee did not sufficiently allege that her constitutional rights were violated.

Given the absence of a constitutional violation, we need not address Appellant's alternative basis for reversal -- namely, whether Appellee failed to sufficiently allege a constitutional violation because she did not allege intent to harm. *See Callahan*, 18 F.4th 149 n.5 (declining to reach the district court's dismissal of the plaintiff's complaint for failure to plead intent to harm after determining that the complaint must be dismissed because the plaintiff did not sufficiently allege an affirmative act).

Even if Appellee did sufficiently allege that her constitutional rights were violated, we conclude that reversal is still required because Appellee has not demonstrated that it was clearly established at the time of the incident that she had a constitutional right to be protected from a student who was known to have a violent history. "To determine whether a right was clearly established, we typically ask whether, when the defendant violated the right, there existed either controlling authority—such as a published opinion of this Court—or a robust consensus of persuasive authority, that would have given the defendants fair warning that their conduct was wrongful." *Turner*, 930 F.3d at 644 (internal citation and quotation marks omitted). In *Turner v. Thomas*, 930 F.3d 640 (4th Cir. 2019) and *Callahan v. N.C. Dep't of Pub. Safety*, 18 F.4th 142 (4th Cir. 2021), we emphasized that since *Pinder v. Johnson*, 54 F.3d 1174 (4th Cir. 1995), "we have never issued a published opinion recognizing a successful state-created danger claim." *Turner*, 930 F.3d at 646; *Callahan*, 18 F.4th at 147 (citation omitted). Notably, while we acknowledged in *Pinder* that "[a]t some point on the spectrum between action and inaction, the state's conduct may

8

implicate it in the harm caused," 54 F.3d at 1175, we nevertheless determined that the defendant was entitled to qualified immunity, *id*. at 1172. In doing so, we stated that at the time of the incident in question, it was not clearly established that the defendant police officer had an affirmative duty to protect citizens from the actions of a third party. *Id*. at 1172.

This case fits neatly within our jurisprudence on state-created danger claims. As in *Pinder*, *Turner*, and *Callahan*, the injury here was, at best, indirectly caused by Appellant's failure to protect Appellee from TB. *Pinder*, 54 F.3d at 1175–76; *Turner*, 930 F.3d at 646–47; *Callahan*, 18 F.4th 148–49. And as in those cases, we had not made clear at the time of the incident in this case that a defendant's failure to adequately respond to a potentially dangerous situation gives rise to an actionable constitutional claim under the state-created danger doctrine. Because it was not clearly established at the time of the incident that a defendant's failure to act gives rise to a state-created danger claim, we conclude that Appellant is entitled to qualified immunity. *See Graves*, 930 F.3d at 327 ("[C]ourts should resist the temptation to accept plaintiffs' attempts to artfully recharacterize inaction as action." (alteration adopted and internal quotation marks omitted)).

## IV.

For the reasons set forth herein, we reverse the district court's denial of qualified immunity and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

9