# United States Court of Appeals
## For the First Circuit

No. 23-2026

JOHN COHEN, as next friend and personal representative
of the Estate of Eric Cohen,

Plaintiff, Appellant,

v.

CITY OF PORTLAND; CHRISTOPHER GERVAIS, individually and in his
official capacity as Sergeant, Portland Police Department;
MICHAEL RAND, individually and in his official capacity as
Sergeant, Portland Police Department; RONALD GIROUX, JR.,
individually and in his official capacity as a
Fireman, Portland Fire Department,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Kayatta, Thompson, and Gelpí,
Circuit Judges.

Verne E. Paradie, Jr. for appellant.
Kasia S. Park, with whom Susan M. Weidner and Drummond Woodsum
were on brief, for appellees.

August 1, 2024

**KAYATTA**, **Circuit Judge**.  During an apparent psychotic episode, Eric Cohen attacked his girlfriend and fled into the cold waters of Portland's Back Cove.  After around a half hour, Cohen became hypothermic and drowned.  His estate sued the City of Portland, as well as several members of the City's police and fire departments.  The estate claimed that the officers violated Cohen's substantive due process rights by failing to rescue him from a state-created danger.  The estate further claimed that the City violated the same due process rights when it failed to train its employees in crisis intervention techniques that could have saved Cohen.

The district court dismissed the state-created danger claims against two police officers under Federal Rule of Civil Procedure 12(b)(6).  After discovery, the court granted summary judgment to a third defendant -- a firefighter -- who was also the subject of a state-created danger claim.  The court likewise granted summary judgment to the City of Portland on the estate's failure-to-train claim.  The estate now appeals those rulings.  Seeing no error, we affirm.  Our reasoning follows.

## I.

We begin with the district court's order under Rule 12(b)(6) dismissing the state-created danger claims against two sergeants in the Portland Police Department -- Christopher Gervais and Michael Rand.  Our review is de novo.  See Blackstone

- 2 -

Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001).  That means "we must accept as true the factual allegations of the complaint and draw all reasonable inferences in favor of [Cohen's estate]."  Id.

**A.**

At or around 1 p.m. on April 12, 2020, the Portland Police Department received an emergency call.  The caller said that Cohen -- apparently in the throes of a psychotic episode -- had attacked his girlfriend, stripped off his clothes, and fled the scene.  After arriving at the scene of the emergency call, several officers (who are not defendants in this case) chased Cohen into the waist-deep waters of the Back Cove.[1]  The Back Cove is an estuary basin on the northern side of the Portland peninsula.  When Cohen entered the Back Cove at around 1:23 p.m., the water was approximately forty-one degrees Fahrenheit.

Shortly after Cohen entered the Back Cove, Gervais asked the Portland Fire Department for a rescue boat to retrieve Cohen.  Gervais drove across the city to get the boat, a trip that took

---

[1]  The district court later found that Cohen had "several options other than entering the water," and that the pursuing officers did not, in fact, chase him into the Back Cove.  However, given that Cohen's estate appeals a dismissal under Rule 12(b)(6), we recount the version of the story that appears in the complaint.  See Blackstone Realty LLC, 244 F.3d at 197.  In any event, the estate does not argue on appeal that any defendant should be liable for chasing Cohen into the Back Cove.

him around eleven minutes.  The rescue boat set off at 1:34 p.m. with Gervais and two other officers on board.

Meanwhile, Rand arrived at the Back Cove at 1:33 p.m. Upon his arrival, Rand spoke with police officer Blake Cunningham, a former U.S. Coast Guard rescue swimmer.  Cunningham said that if Cohen "beg[an] to struggle," he would "go in and [re]cover him." Rand responded:  "We should have the fire boat right off, but I understand what you gotta do."  At 1:40 p.m., Cunningham remarked that Cohen would likely drown soon.  Rand replied, "Oh, I know," but added that he did not want Cunningham retrieving Cohen without a life jacket.[2]  He then began looking for a life jacket to give Cunningham.  At 1:42 p.m., Cunningham "reported that [Cohen] had gone under water," and commented "[h]e is dead."

Three minutes later, at 1:45 p.m., Cunningham said that if Rand would "give [him] a life jacket, [he would] go save this guy's life."  Rand authorized Cunningham to enter the water, but then retracted his order when the rescue boat reported that it was

---

[2]  Rand's statement that Cunningham should wear a life jacket does not appear in the complaint.  Instead, it appears in body camera footage that Cohen's estate attached to its opposition to the defendants' motion to dismiss.  The district court considered the footage at the motion-to-dismiss stage because neither party disputed its authenticity.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (explaining that courts ordinarily do not consider documents not attached to the complaint or incorporated therein when reviewing a motion to dismiss, but noting exceptions for, among other things, documents "the authenticity of which [is] not disputed by the parties").  No party challenges that decision here, so we consider the officers' body camera footage as well.

100 feet from Cohen. At around the same time, Rand radioed fire dispatch to determine if an ambulance was nearby, only to find that no ambulance had been assigned. Dispatch assigned an ambulance at 1:46 p.m.

At 1:47 p.m., Gervais reported that the rescue boat had pulled Cohen from the water. Cohen had been face down in the waist-deep water, and Gervais could not find a pulse. Neither Gervais nor any other officer on the rescue boat attempted to resuscitate Cohen. Two minutes later, the boat arrived on shore with Cohen's body. No medical or emergency equipment was on shore. A firefighter covered Cohen with his jacket, but no officer tried to revive or otherwise tend to Cohen. An ambulance arrived at 1:53 p.m., and paramedics administered CPR. The ambulance left the Back Cove around a half hour later. Cohen was pronounced dead at Maine Medical Center at 2:52 p.m. The medical examiner ruled that Cohen died from hypothermia and drowning.

**B.**

Cohen's estate sued Rand and Gervais under 42 U.S.C. § 1983 and its Maine analogue. The estate alleged that the officers deprived Cohen of his life -- in violation of the Due Process Clause -- by failing to rescue him from a state-created danger. "The disposition of a [section] 1983 claim also controls a claim under the [analogous Maine statute]." Berube v. Conley,

- 5 -

506 F.3d 79, 85 (1st Cir. 2007). Accordingly, we focus our analysis on the federal section 1983 claim.

The Due Process Clause does not create an "affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). However, a plaintiff may hold a state officer liable for "failing to protect plaintiffs from danger created or enhanced by [the officer's] affirmative acts." Irish v. Fowler, 979 F.3d 65, 67 (1st Cir. 2020) ("Irish II"). To make out a state-created danger claim, a plaintiff must establish that: (1) a state actor "affirmatively acted to create or enhance a danger to the plaintiff," (2) the challenged acts "created or enhanced a danger specific to the plaintiff and distinct from the danger to the general public," (3) the challenged acts "caused the plaintiff's harm," and (4) the state actor's conduct, "when viewed in total, shocks the conscience." Id. at 75. With these requirements in mind, we consider the claims against each police sergeant in turn.

**1.**

Gervais appears twice in the complaint. First, at 1:23 p.m., Gervais drove eleven minutes to retrieve a rescue boat. Then, at 1:47 p.m., Gervais retrieved Cohen's body from the water, but did not perform CPR or any other emergency procedure.

Neither piece of conduct created or affirmatively enhanced the danger to Cohen. Rather, the danger to Cohen emerged when he entered the icy waters of the Back Cove. There is no allegation that Gervais forced Cohen into the water, prevented him from leaving the water, or drove him into the water through "deliberate indifference" for his safety. Irish II, 979 F.3d at 74. If anything, Gervais's retrieval of the rescue boat was an attempt to mitigate the danger that Cohen faced.

At the very worst, the complaint alleges facts that might show that Gervais acted negligently by not retrieving the boat or performing CPR quickly enough. But it is well-settled that "mere negligence [is] insufficient to maintain a claim of substantive due process violation." Irish v. Maine, 849 F.3d 521, 528 (1st Cir. 2017) ("Irish I"). The estate suggests that Gervais's delay in performing CPR deviated from police protocol, and that a departure from police protocol can be independently sufficient to support a state-created danger claim under Irish I. However, Irish I never held that negligent deviation from police procedure is -- on its own -- enough to support a state-created danger claim. See id. at 523-24 (remanding for further discovery on several issues, including whether defendant officers "depart[ed] from established police protocol or training").

Taking a slightly different tack, Cohen's estate argues that Gervais enhanced the danger to Cohen when he "deliberate[ly]

cho[se]" not to perform CPR promptly. The estate's view is basically that an officer must attempt to rescue a plaintiff from a danger that the officer did not create, because any undue recalcitrance on the officer's part would enhance the danger to the plaintiff. This is just another way of saying that a plaintiff has an affirmative right to government aid in the face of a preexisting danger -- a view that DeShaney squarely rejects. 489 U.S. at 195-96; see also Callahan v. N.C. Dep't of Pub. Safety, 18 F.4th 142, 147 (4th Cir. 2021) ("[A]llowing continued exposure to an existing danger by failing to intervene is not the equivalent of creating or increasing the risk of that danger." (quoting Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015))). Ultimately, the estate's counterargument depends entirely on "recast[ing] inactions and omissions as affirmative acts." Callahan, 18 F.4th at 148.

We therefore affirm the district court's dismissal of the state-created danger claim against Gervais.

## 2.

The state-created danger claim against Rand fares no better. In its brief, the estate makes three arguments for concluding otherwise. First, the estate stresses that Rand did not attempt to rescue Cohen or contact a crisis intervention specialist. Second, the estate complains that Rand did not arrange for an ambulance or emergency medical equipment upon Cohen's

- 8 -

removal from the water.  Third, the estate argues that Rand should be liable because he prevented Cunningham from rescuing Cohen.

The estate's first two arguments presume that Rand had a duty to rescue Cohen.  But Cohen had already been in the water for ten minutes before Rand arrived at the Back Cove.  As we have explained, given these facts, Rand had no constitutional duty to undertake the actions that he opted against.  See, e.g., DeShaney, 489 U.S. at 195; Callahan, 18 F.4th at 147.

That leaves the estate's argument that Rand affirmatively enhanced the danger to Cohen by preventing Cunningham from entering the water without a life jacket.  This argument presumes that Rand had a duty to let Cunningham attempt a rescue.  Yet, that presumption is likely wrong.  If Rand had no individual duty to interrupt Cohen's "continued exposure to an existing danger," see Callahan, 18 F.4th at 147, it follows that he also had no duty to order another officer to do so.  In any event, Rand's requirement that Cunningham wear a life jacket before entering forty-one-degree water to engage with an individual undergoing a mental health crisis hardly shocks the conscience. See Irish II, 979 F.3d at 75; cf. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 836-37, 854-55 (1998) (finding that an officer's decision to engage in a reckless high-speed chase after a minor speeding violation, eventually causing the death of a sixteen-year-old motorcycle passenger, did not shock the

conscience); <u>Welch</u> v. <u>City of Biddeford Police Dep't</u>, 12 F.4th 70, 78-81 (1st Cir. 2021) (Kayatta, J., dissenting) (citing <u>Lewis</u> to highlight the strictness of the "shock the conscience" test, and noting that the test is not merely a "form of re-labeled negligence"). For that reason alone, the estate's argument fails.

We therefore also affirm the district court's dismissal of the state-created danger claim against Rand.

## II.

We now proceed to the district court's grant of summary judgment to a Portland firefighter -- Ronald Giroux -- and the City of Portland. Summary judgment is appropriate where the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). We review the grant of summary judgment de novo, construing the record in the light most favorable to Cohen's estate. <u>See</u> <u>Hardy</u> v. <u>Loon Mountain Recreation Corp.</u>, 276 F.3d 18, 20 (1st Cir. 2002).

## A.

We first consider the state-created danger claim against Giroux. Giroux arrived at the Back Cove at 1:42 p.m. Cohen had already been in the water for around twenty minutes. Giroux did not know that Cohen was in the midst of a psychotic episode. He knew only that Cohen had assaulted his girlfriend before fleeing into the water. At 1:43 p.m., Giroux called out: "Tell him we're gonna kick his ass if he gets out of that water." Giroux's only

other involvement at the scene was to hand Rand a life jacket for Cunningham.

Recall that to prevail on a state-created danger claim, a plaintiff must show that the defendant's actions "caused the plaintiff's harm." Irish II, 979 F.3d at 75. This causation analysis is "cabined within common law tort principles." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989). The plaintiff must show that the defendant's actions were both the but-for and proximate cause of his or her injury. See Rodríguez-Cirilo v. García, 115 F.3d 50, 53 (1st Cir. 1997). And the evidence of this causation may not be "unduly speculative." Est. of Smith v. Salvesen, 143 A.3d 780, 786 (Me. 2016).

Here, the district court found that no reasonable jury could conclude that Giroux's threat factually or legally caused Cohen's death. See Cohen ex rel. Est. of Cohen v. City of Portland, No. 2:21-CV-00267-NT, 2023 WL 8187213, at *10 (D. Me. Nov. 27, 2023). Specifically, the court found that a jury could only find causation via a series of increasingly speculative inferences:

> [The jury] would have to find that Cohen could have made the deliberate choice to come to shore while in a state of alleged psychosis, would have been able to get himself to shore after having been in the cold water for twenty minutes already, could have done so faster than the rescue boat ultimately did, and would not have died of hypothermia or drowning if he had started for the shore at the time the comment was made.

- 11 -

Id.

In its brief on appeal, Cohen's estate does not engage with the district court's persuasive causation analysis. Instead, the estate simply asserts that Cohen was in shallow water, and therefore "may have been able to come out of the water" absent Giroux's threat. Even if we assume that Cohen could have come out of the water in defiance of Giroux's bellowed threat, this assumption would not justify finding that (1) he would have done so, (2) he would have done so before the rescue boat arrived, or (3) doing so would have prevented his eventual death. Cohen's estate does not point to any record evidence that overcomes these obstacles to a causation finding. And we can identify none. Accordingly, we conclude that the district court properly granted summary judgment to Giroux on causation grounds. We offer no opinion on the district court's alternative bases for granting summary judgment.

**B.**

Finally, the district court correctly granted summary judgment to the City of Portland on the Cohen estate's failure-to-train claim. This conclusion flows inexorably from our finding that the district court properly dismissed Rand and Gervais from the case under Rule 12(b)(6).

A municipality is liable under 42 U.S.C. § 1983 "if [an] employee has not been adequately trained and [a] constitutional

- 12 -

wrong has been caused by that failure to train." City of Canton v. Harris, 489 U.S. 378, 387 (1989). Thus, a finding of municipal liability under a failure-to-train theory requires a predicate constitutional violation by an individual defendant. See Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005) ("The finding that [a municipal officer] violated [the plaintiff's] constitutional rights is necessary for any finding that the [municipality] is liable."). The municipality's liability must "run through" the unconstitutional actions of its untrained employee. Id.

Here, the only employees that the estate says were untrained are Rand and Gervais. The estate notes that both officers were behind on their required annual crisis intervention training. And the estate argues that both officers violated Cohen's due process rights by failing to employ crisis intervention techniques to rescue him. Basically, in the estate's view, the City's failure to train those two officers caused Cohen's eventual death.[3]

As we have explained, the district court correctly dismissed the complaint against both officers. This meant that, at the summary judgment stage, there was no longer an individual defendant through whom municipal liability for allegedly deficient

_____

[3] There is no record evidence of any other defendant falling behind on mandatory crisis intervention training.

- 13 -

police training could "run."  See id. at 26.  This fundamental defect dooms the estate's failure-to-train claim.  We therefore affirm the district court's grant of summary judgment without analyzing its remaining reasoning.

### III.

"Protect and serve" is the motto of the Portland Police Department.  Even acknowledging the challenge posed by Cohen's behavior, the efforts of the responding officers likely fell short of the aspirations behind that motto.  That being said, this appeal turns on whether any defendant violated Cohen's constitutional rights.  And for the foregoing reasons, the answer is clearly no.  The district court's dismissal and summary judgment orders are therefore affirmed.